UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FARTIMA HAWKINS

VERSUS

SEAN FOWLER, ET AL

CIVIL ACTION

NO. 09-639-JJB-CN

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant, United States of America's ("the government"), initial motion to dismiss for lack of subject matter jurisdiction. (Doc. 15.)  Plaintiff, Fartima Hawkins and co-defendant, State Farm Insurance Company, (here, collectively "Hawkins") jointly filed an opposition. (Doc. 17.) The government filed a reply. (Doc. 18.)  Because the parties submitted matters outside the pleadings, the Court converted the motion to one for summary judgment.  (Doc. 19.)  This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.  Oral argument with respect to this motion is not necessary.  For the following reasons, the Court GRANTS defendant's motion for summary judgment.

### Background

At approximately 1:30 a.m. of Mardi Gras day, February 5, 2008, Sergeant Sean Fowler while driving his government owned vehicle ("GOV"), collided with a car driven by Fartima Hawkins at the intersection of Harding and Howell Boulevards in Baton Rouge, Louisiana.  At the time, the United States of America

1

employed Fowler as an Army recruiter in active military status. Fowler worked in the Army's Recruiting Office in Covington, Louisiana, where he had been employed for approximately a year. At the time of the accident, Fowler lived in Baton Rouge approximately one mile from the site of the accident.

Fowler was never provided any type of monetary mileage allotment for his commute between his residence in Baton Rouge and the Covington recruiting office. According to the Covington recruiting office's procedures in place regarding GOVs, a recruiter would request a set of keys directly from the supervisor, Sergeant Thomas Putnam. If Putnam approved the request, he would provide the recruiter keys to a vehicle along with a mileage log. By the end of the workday, the recruiter had to return the vehicle to the Covington office and return the keys to a lockbox on Putnam's desk. Upon returning the keys, the recruiter also had to fill out, sign, and turn in the mileage log. The record contains evidence that recruiters regularly violated these procedures, that the lock on the lockbox did not function, and that Putnam knew of these deficiencies.

At about 11:00 p.m. on Mardi Gras eve, Fowler and some co-workers left the recruiting office and went next door to a daiquiri shop where Fowler socialized, drank a 32 ounce daiquiri, and watched a basketball game. When Fowler left the daiquiri shop, he went back next door to the recruiting office, gathered his belongings, and checked some e-mails. Sometime between midnight and 12:30 a.m. on Mardi Gras morning, Fowler left the recruiting office and started his drive home in one of the GOVs.

When Fowler arrived in north Baton Rouge, he took the Metro Airport exit and drove down Harding Boulevard. He fell asleep behind the wheel as he approached the intersection where the accident occurred and woke-up after the accident. Officers took Fowler to the East Baton Rouge Sheriff's Office where he took a breathalyzer test showing a blood alcohol level of .112%, beyond the permissible limit in Louisiana. Fowler was criminally charged with driving while intoxicated.

## Summary Judgment Standard

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial rests on the non-movant, as it does here, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-movant's case. *See id.* The movant may do so by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case. *Id.*

Although the Court considers any disputed or unsettled facts in the light most favorable to plaintiff, he may not merely rest on allegations set forth in his pleadings. Instead, plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions

will not satisfy plaintiff's burden. *See Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). If, once plaintiff has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the plaintiff, summary judgment will be granted. *See Celotex,* 477 U.S. at 322; *see also* Fed. Rule Civ. P. 56(c).

## Analysis

It is undisputed that Fowler was employed by the United States military and caused the accident that injured Hawkins while driving a GOV. Hawkins seeks damages against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671 et seq. ("FTCA"). Under the FTCA, Hawkins must prove that at the time of the accident Fowler was acting "within the course and scope of his office or employment." 28 U.S.C. § 1346(b)(1). Thus, the parties rightly agree that this case hinges on whether Fowler was in the course and scope of employment while he traveling home at the time of the accident. Army regulations refer to travel between home and work as domicile to duty ("DTD") travel. If, as Hawkins points out, no genuine issue of fact exists regarding this DTD travel issue, the government's motion for summary judgment should be granted. For the reasons discussed below, the Court finds that Fowler was not engaged in the course and scope of his employment during his DTD travel on the night of the accident; therefore, the government is entitled to summary judgment.

The Going and Coming Rule Applies

Louisiana state law governs the "course and scope" inquiry in this case. *See Garcia v. United States,* 62 F.3d 126, 127 (5th Cir. 1995) (holding "whether a particular federal employee was or was not acting within the scope of his employment is controlled by the law of the state in which the negligent or wrongful conduct occurred"). The parties do not dispute the general rule that an employee is not considered in the course and scope of employment in cases involving accidents occurring during travel to and from work. This rule is often termed the "going and coming" rule. *See Fasullo v. Finley*, 2000-2659, p. 9 (La. App. 4 Cir. 2/21/01)*;* 782 So.2d 76, 83 (citing *Orgeron v. McDonald*, 93-1353 (La. 7/5/94); 639 So. 2d 224, 227). The parties differ greatly, however, in their interpretation of whether the going and coming rule applies in this case and, if so, whether the present facts indicate that an exception to that rule applies as well.

As an initial matter, the parties' heavy reliance on Louisiana case law in support of their arguments warrants a cautionary reference to the cross-usage of the going and coming rule in workers' compensation and tort contexts. Both parties use workers' compensation and tort cases in support of their arguments, specifically in discussing the parameters of the general rule and its exceptions, and employ concepts from each regime almost interchangeably. However, at least one court has noted that workers compensation cases are different from tort cases, recognizing that application of the going and coming rule might take on different meanings under each regime. *Orgeron*, 639 So. 2d at 226. That said,

5

the Court finds sufficient similarity as to the underlying purpose of the rule under both workers' compensation and tort schemes to apply general principles and exceptions discussed in both contexts to the limited course and scope of employment inquiry at hand.[1]

Because the accident indisputably occurred during Fowler's travel from his place of work to his home, barring an exception, application of the general going and coming rule precludes Hawkins' recovery against the government on a vicarious liability theory.  Hawkins argues that the dispute over whether Fowler had permission to use the vehicle to travel to and from work creates a genuine issue of material fact on the course and scope of employment issue because Louisiana case law finds employees to be in the course and scope of employment when they use their employer's vehicle with permission.  Hawkins cites four Louisiana cases in support of this argument.  The court addresses each in turn.

In *Brooks v. Guerrero*, the court held that an employee driver was in the course and scope of his employment, even though the accident occurred during his unpaid lunch hour while the driver was on a personal errand, because the

---

[1] Namely, that the purpose behind the going and coming rule is the same in workers' compensation and tort contexts, that is, to eliminate substantial administrative concerns if the course and scope of employment extends to travel to and from work.  *Compare* 13 La. Civ. L. Treatise, Workers' Compensation Law and Practice § 168 (4th ed.) (stating "if we were to admit that the trip to and from employment might be covered, when should we say that trip begins? When the employee leaves his house to begin his trip? When he comes downstairs for breakfast? When he gets up to shave and shower, so that he can come downstairs for breakfast, so that he can leave his house to begin his trip? The administrative problems here are substantial.") *with Orgeron*, 639 So. 2d at 227 (a tort case stating "treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination").

driver received authorization to use the vehicle. 02-379, p. 4 (La. App. 5 Cir. 10/29/02); 831 So. 2d 424, 427-28. The court noted an exception to the going and coming rule where the "employer has furnished transportation as an incident to the employment agreement, either through a vehicle or payment of expenses, or where wages are paid for the time spent traveling." *Id.* at 428. Furthermore, the court noted that this exception includes situations where the vehicle is used in performance of employment responsibilities and cited several factors informing that analysis, including: 1) whether the employer received a benefit from the employee's vehicle use, 2) whether the employer maintained control over the employee at the time of the accident, 3) whether the employer authorized the use of the vehicle, and 4) whether the employee's motive arose from personal objectives or employer concerns. *Id.*

In concluding that the employee's use of the truck was in performance of his employment responsibility, the *Brooks* court referenced the express authorization given to the employee and the fact that use of the vehicle furthered the employer's concerns by advancing effective use of work time. *Id.* The court made specific reference to the fact that the employee's going to lunch in the truck arose out of the nature of his employment that required a worker to be on the road during the course of the workday.

By contrast, here, even if express permission had been given for Fowler to use the truck to travel home from work, nothing in that arrangement could be construed as a benefit to the government. The next day, Mardi Gras, was a

7

holiday; Fowler had no recruiting meetings scheduled; nothing else in the record connects use of the car to work; and, finally, instead of going to lunch he was driving home for the night.

Similarly, in *Howard v. City of Alexandria*, the court focused on the convenience and benefit experienced by the employer in allowing an employee to use the company car on his lunch break.  581 So. 2d 321, 323-24 (La. App. 3 Cir. 1991).  In finding that the accident occurred during the course and scope of employment, the court observed that the accident occurred during normal working hours on a mission expected and contemplated by the employer, and that use of the vehicle was a benefit to the employer because the city saved valuable work time by eliminating travel to a central location where employees kept their personal vehicles.  *Id.* at 323.  As stated above, Fowler's behavior here did not accrue any special benefit to the government.  Fowler's use of the car late at night to drive home in preparation for a day off benefitted only him.  Thus, under *Howard*, even if Fowler had permission to use the GOV, his trip that night was not in the course and scope of employment.

Hawkins also cites two workers' compensation cases, *Keith v. Gelco Corp.*, 30,022 (La. App. 2 Cir. 12/10/97); 705 So. 2d 244, and *Phillips v. EPCO Carbon Dioxide Products, Inc.*, 35,740 (La. App. 2 Cir. 2/27/02); 810 So. 2d 1171.  Hawkins argues that these cases illuminate an applicable exception to the going and coming rule for situations where the employer has "interested" himself in the transportation of the employee as incident to the employment agreement

8

either by contractually providing transportation or by reimbursing travel expenses. *Keith*, 705 So. 2d at 247; *Phillips*, 810 So. 2d at 1173. The parties do not allege that reimbursement is at play here. Yet, Hawkins argues that because procedures were not in place to prevent domicile to duty use of the GOV, and because Fowler's superior may have permitted this use, this case represents a situation where the government has sufficiently interested itself in Fowler's transportation to warrant an exception to the going and coming rule. The evidence in the record does not support such a conclusion.

      The employees in *Keith* were injured in a company car that regularly picked them up and brought them to work. *Keith*, 705 So. 2d at 248. The court found the arrangement to be incident to their employment agreement because it ensured efficient team travel to and from work by enabling the work supervisor to get his crew to work on time and to determine if he would have a full crew for the day. *Id.* at 248 n.3. In *Phillips*, the employer took an even more overt interest in employee transportation by including, as an inducement to employment in the employment agreement, either reimbursement for travel or a company car. *Phillips*, 810 So. 2d at 1175. There is no similar employer interest here.

  By contrast, although GOVs were available for recruiters' official use, the record reveals nothing in Fowler's employment agreement supporting government acknowledgement or approval of GOV use for DTD travel. In fact, Army recruitment regulations expressly prohibit DTD use for the sole purpose of commuting. Whether Fowler had express or implied permission from his superior

to use the vehicle for DTD travel is not material because of the explicit nature of his employment agreement barring such practices.  Moreover, regardless of whether DTD travel was a custom at Fowler's recruiting station, the practice had no positive bearing on job performance.  Therefore, comparisons to *Keith* and *Phillips* are inapposite and Fowler cannot take refuge in an exception to the going and coming rule.

Finally, Hawkins argues that because Fowler considered himself to be "constantly working" as an Army recruiter and worked long hours and potentially discussed the Army with prospective recruits in various settings, even in social gatherings like the bar Fowler went to on the night of the accident, that Fowler should properly be considered to be in the course and scope of employment in these endeavors.  However, if the Court adopts Hawkins' reasoning, it would lead to undesirable consequences.  Extending the course and scope determination to the behavior at issue here, namely, drinking in a bar then driving a GOV home against regulations in preparation for a day off, would, in effect, allow the exception to swallow the going and coming rule.  By asserting that an employee was "constantly working," employers would always be vicariously liable for torts like the one at issue here.  The Court cannot justify such an expansive reading of the law.

## Conclusion

Because Fowler was not in the course and scope of employment when the accident occurred, Hawkins FTCA claim fails as a matter of law.  Therefore, for

the reasons stated above, the government's motion for summary judgment is GRANTED.

Signed in Baton Rouge, Louisiana, on May 7, 2010.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**